DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, South Carolina Property and Casualty Insurance Guaranty Association ("SCIGA") has appealed from a decision of the Summit County Court of Common Pleas that granted declaratory judgment to Appellee, Para-Chem Southern, Inc. ("Para-Chem"). Para-Chem has appealed from the same decision, with respect to determinations made regarding its insurance policy with National Union Fire Insurance Company of Pittsburgh ("National Union"). The two appeals have been consolidated. We reverse and remand
 I. {¶ 2} Para-Chem, a corporation doing business in Ohio, produces adhesives used to attach carpeting to floors. On September 28, 1998, Gregory Roach and Gordon Falkner sustained severe injuries as a result of an explosion and a fire ("the accident") that erupted while the two men were using an adhesive manufactured by Para-Chem. Roach and Falkner each filed a complaint against Para-Chem in the Summit County Court of Common Pleas. The trial court ultimately consolidated the two cases and submitted the matter to a jury on a products liability failure to warn claim. On July 8, 2002, the jury returned a $3,000,000 verdict in favor of Falkner and a $5,000,000 verdict in favor of Roach. These verdicts were reduced to a judgment, which was affirmed by this Court. See Falkner v. Para-Chem, 9th Dist. No. 21288, 2003-Ohio-3155.
 {¶ 3} Shortly before this Court affirmed the judgment against it, Para-Chem filed a declaratory judgment action in the Summit County Court of Common Pleas. In that action, which is the subject of this appeal, Para-Chem sought declarations regarding the duties owed to it by National Union and SCIGA.
 {¶ 4} At the time of the accident, Para-Chem maintained a commercial umbrella insurance policy with National Union, with limits of $20,000,000 per occurrence and in the aggregate. Para-Chem's primary insurance carrier at the time of the accident was Reliance Insurance Company ("Reliance"). Para-Chem maintained a general liability insurance policy with Reliance, with a limit of $1,000,000 in the aggregate for product liability claims.
 {¶ 5} SCIGA is a non-profit, unincorporated statutory entity created by the South Carolina Property and Casualty Insurance Guaranty Association Act ("the Act"). See S.C. Code Ann. 38-31-10 to 38-31-170. SCIGA's purpose is to "provide some protection to insureds whose insurance companies become insolvent." SouthCarolina Property Cas. Ins. Guar. Assn. v. Carolinas Roofing Sheet Metal Contr. Self-Ins. Fund (1994), 315 S.C. 555;446 S.E.2d 422, 424. Para-Chem found itself in the predicament which SCIGA was designed to ameliorate when Reliance, which was one of SCIGA's member insurers, was declared insolvent by the Commonwealth Court of Pennsylvania.
 {¶ 6} On July 1, 2002, before filing any other motions or responsive pleadings, SCIGA filed a motion to dismiss on the ground that the trial court lacked personal jurisdiction. The trial court denied this motion.
 {¶ 7} At an August 6, 2002 pretrial conference, the parties agreed to submit the case by stipulations and briefs, and the trial court entered a scheduling order reflecting this agreement. The parties submitted stipulations, and National Union submitted a merit brief. Para-Chem and SCIGA, however, submitted motions for summary judgment, along with memoranda in support of their motions. The trial court did not rule on the summary judgment motions, but apparently treated the memoranda attached to those motions as merit briefs. On February 24, 2003, the trial court rendered its final judgment, determining that SCIGA is required to provide coverage in the amount of $300,000 each to Roach and Falkner, and that National Union is required to provide coverage "once the underlying insurance, or retained limit in the amount of $1,000,000 has been paid."
 {¶ 8} This appeal followed. SCIGA and Para-Chem have each asserted two assignments of error.
 II.
A. SCIGA's Assignments of Error
First Assignment of Error
"The trial court erred as a matter of law when it denied the motion to dismiss filed by SCIGA."
 {¶ 9} In its first assignment of error, SCIGA argues that the trial court erred by determining that it had personal jurisdiction over SCIGA. We disagree.
 {¶ 10} "This Court reviews a lower court's assertion of personal jurisdiction de novo." Hack v. Fisher-Bord WorldwideMoving, 9th Dist. No. 20914, 2002-Ohio-3863, at ¶ 8. Ordinarily, courts employ a two-part test in order to determine whether Ohio has personal jurisdiction over a defendant. First, the court must determine whether the state's long-arm statute and applicable civil rule confer personal jurisdiction. If the court concludes that the Ohio statute and rule do confer jurisdiction, it must next determine whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. U.S. Sprint Communications Co. Ltd. Partnership v.Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181, 183.
 {¶ 11} SCIGA has not argued, however, that the assertion of personal jurisdiction over it contravenes Ohio's long-arm statute or the applicable civil rule. While SCIGA did argue below that this assertion of jurisdiction is prohibited by the due process clause of the Federal Constitution, it has not challenged the trial court's determination to the contrary. Instead, SCIGA maintains that the South Carolina legislature intended to limit personal jurisdiction over SCIGA to the courts of South Carolina, through the following subsection of SCIGA's governing statute:
"The association * * * may sue or be sued; provided, however, that any action brought directly against the association must be brought against the association in the State of South Carolina as a condition precedent to recovery directly against the association." S.C. Code Ann. 38-31-60(j).
 {¶ 12} Prior to 1994, this subsection provided simply that "the association may * * * sue or be sued." In 1994, the South Carolina legislature amended the subsection, adding the proviso which now modifies SCIGA's capacity to sue or be sued. As SCIGA has argued, the cases upon which the trial court relied in asserting personal jurisdiction were decided prior to this 1994 amendment.
 {¶ 13} Emphasizing the phrase "any action brought directly against the association must be brought against the association in the State of South Carolina," SCIGA contends that, according to its plain meaning, S.C. Code Ann. 38-31-60(j) purports to deny personal jurisdiction over SCIGA to all states other than South Carolina. However, such a reading gives no effect to the remaining phrase of the proviso: "as a condition precedent to recovery directly against the association."
 {¶ 14} Considered together, these two phrases reveal that the proviso is indeed designed to shelter SCIGA from the authority of states other than South Carolina. The proviso constructs this shelter, however, in a manner possessed of more finesse than the outright divestment of jurisdiction urged by SCIGA. Specifically, the proviso conditions direct recovery against SCIGA upon the filing of the underlying action in a South Carolina court. Para-Chem has conceded that in order to secure a recovery, it would have to pursue its action against SCIGA in the South Carolina court system. Para-Chem has not, however, sought a recovery against SCIGA; rather, it has sought declarations clarifying its rights and obligations with respect to SCIGA.
 {¶ 15} As Para-Chem has pointed out, the Act does not provide an explicit definition of the term "recovery." The proviso itself does not illuminate the intended meaning of the term. Several other portions of the Act, however, do use the term "recovery," within contexts that indicate that the term was intended to refer to the receipt of a financial benefit. See S.C. Code Ann. 38-31-20, 38-31-100. SCIGA does not dispute this definition of "recovery," but it does argue that Para-Chem is indeed seeking "to have the Ohio courts order [SCIGA] to pay up to $300,000." In other words, according to SCIGA, "it is evident [that] Para[-]Chem seeks more than declaration; they want to be empowered to `recover.'"
 {¶ 16} R.C. 2721.02 provides that "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." As Para-Chem's complaint, memorandum in support of its motion for summary judgment, and appellate answer brief make clear, it has consistently sought only those declarations contemplated by R.C. 2721.02, as opposed to an order granting a monetary recovery against SCIGA. In its complaint, Para-Chem stated that "[n]o monetary relief is sought against [SCIGA] in this cause, and instead the declaration sought by [Para-Chem] is the amount of limits to be applied and to be allocated between National Union and [SCIGA]." In its memorandum in support of its motion for summary judgment, Para-Chem explained that it "filed this declaratory judgment action to ascertain the rights and obligations of itself, [National Union], and [SCIGA] with respect to the satisfaction of [the judgments awarded to Roach and Falkner]." In its answer brief filed in connection with this appeal, Para-Chem requested this Court to "affirm the judgment of the lower Court * * * with respect to SCIGA's duty to pay." (Emphasis added).
 {¶ 17} Because Para-Chem has not sought an order awarding monetary relief against SCIGA, the trial court did not offend S.C. Code Ann. 38-31-60(j) by exercising personal jurisdiction over SCIGA in this action. SCIGA's first assignment of error is overruled.
 Second Assignment of Error
"The trial court erred as a matter of law when it denied the motion for summary judgment filed by SCIGA."
 {¶ 18} As explained above, while SCIGA did file a motion for summary judgment upon stipulated facts, the trial court did not rule on that motion before rendering its final judgment. Instead, the trial court apparently treated the memorandum attached to the motion as a merit brief. Therefore, we will do the same for the purposes of review.
 {¶ 19} Because the parties stipulated to the underlying facts in this case, and the only issue raised by this assignment of error is whether the trial court correctly applied the law to those facts, our review is de novo. Wayne Mut. Ins. Co. v.Parks, 9th Dist. No. 20945, 2002-Ohio-3990, at ¶ 13.
 {¶ 20} SCIGA first reiterates its contention that the trial court erred by asserting personal jurisdiction over it. This argument is without merit, for the reasons provided in our analysis of SCIGA's first assignment of error. SCIGA also argues that the trial court erred by determining that SCIGA is not entitled to a set-off for payments made by the Ohio Bureau of Workers' Compensation ("BWC") to Roach and Falkner.[1] We agree.
 {¶ 21} The Act giving life to SCIGA contains the following set-off provision:
"A person having a claim or legal right of recovery under any governmental insurance or guaranty program which is also a covered claim shall be required first to exhaust all coverage and limits in recovery under the program. Any amount payable on a covered claim under this chapter must be reduced by the full amount of any recovery under the governmental insurance or guaranty program." S.C. Code Ann. 38-31-100(3).
 {¶ 22} The trial court determined that SCIGA was not entitled to a set-off for the BWC payments received by Roach and Falkner. First, the trial court noted that the South Carolina Act does not explicitly include workers' compensation within the category of "governmental insurance." Next, after assuming, for the sake of argument, that workers' compensation is indeed governmental insurance, the trial court concluded that the set-off requirement is confined to payments made by South Carolina's workers' compensation program.
 {¶ 23} While the South Carolina legislature has not provided a list of the governmental insurance programs contemplated by the Act, the BWC itself, along with Ohio courts, have characterized Ohio's workers' compensation program as a provider of insurance. See State Government Book (4 Ed. 2000) 679; Suez Co. v. Young
(1963), 118 Ohio App. 415, 418; St. Elizabeth Med. Ctr. v.Booker (Dec. 18, 1987), 2nd Dist. No. 10494. Moreover, nothing in the South Carolina Act limits the set-off provision to South Carolina governmental insurance programs; in fact, the Act specifically provides that funds received under "any" such program must be used to reduce recoveries against SCIGA.[2]
 {¶ 24} SCIGA's second assignment of error is sustained.
B. Para-Chem's Assignments of Error
 First Assignment of Error
"The trial court committed reversible error prejudicial to para-chem by failing to determine that National Union * * * is required to pay the amount of the judgments rendered against para-chem (case No. CV 200[0]-09-4089 and case No. CV 2000-09-4389) once SCIGA's limits of coverage have been exhausted."
 {¶ 25} In its first assignment of error, Para-Chem argues that the trial court erred by determining that, according to the terms of its commercial umbrella insurance policy ("the policy"), National Union has no obligation to provide coverage for amounts within the first $1,000,000 of a claim. We agree.
 {¶ 26} The issues raised in this assignment of error involve the interpretation of contract language. The interpretation of written contracts, and the decision as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal. Sherman R. Smoot Co. v. Ohio Dept. of Adm. Serv.
(2000), 136 Ohio App.3d 166, 172.
 {¶ 27} In Section I of the insuring agreement, the policy sets down the following delineation of the coverage provided by National Union: "[w]e will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay[.]" In Section III, subsection E, the policy reiterates that National Union "will be liable only for that portion of damages in excess of the Insured's Retained Limit," and proceeds to define the "Retained Limit," in relevant part, as "[t]he total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the Insured[.]" National Union has maintained that the policy's retained limit is $1,000,000, and that, under the plain terms of the policy, it has no obligation to provide coverage for amounts within this limit.
 {¶ 28} Furthermore, argues National Union, one of the conditions laid down by the policy prevents National Union from becoming obligated to provide coverage within the $1,000,000 retained limit as a consequence of the insolvency of an underlying insurer. That condition, contained in Section VI of the policy, provides that:
"Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.
"But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area."
 {¶ 29} Para-Chem contends, however, that another provision within the policy does require National Union to provide coverage within the $1,000,000 retained limit, under the circumstances of this case. That provision, contained in Section III, subsection D of the policy, states that:
"If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the Insured are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:
"1. In the event of reduction, pay in excess of the reduced underlying limits of insurance; or
"2. In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance."
Para-Chem maintains that SCIGA offers "other insurance providing coverage" to the insured, and that National Union's coverage attaches upon exhaustion of the SCIGA coverage, even if that point is below the retained limit of $1,000,000.
 {¶ 30} We agree that, according to the unambiguous language of the provision cited by Para-Chem, National Union is obligated to "continue in force as underlying insurance" upon exhaustion of the SCIGA coverage. Functioning as a guarantor, to a limited degree, of Para-Chem's insolvent primary insurer, SCIGA supplies "other insurance providing coverage" to Para-Chem. National Union has not denied that the claims of Roach and Falkner qualify as "claims that would be insured" by the National Union policy. Once the coverage provided by SCIGA is exhausted by payment of those claims, National Union's obligation to provide coverage is triggered, regardless of whether or not the $1,000,000 retained limit has been met.
 {¶ 31} Because this provision potentially requires National Union to provide coverage before the $1,000,000 retained limit has been satisfied, it conflicts with the provisions of the policy emphasized by National Union, which expressly deny that National Union has any obligation to provide coverage before that limit is met.
 {¶ 32} It is a well-settled rule that if the provisions of an insurance contract are reasonably susceptible of more than one interpretation, the provisions will be strictly construed against the insurer. King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. It follows that when an insurer inserts conflicting provisions in an insurance policy, the insurer will be bound by that provision that is most favorable to the insured.Boyle v. Great-West Life Assur. Co. (1985), 27 Ohio App.3d 85,89.
 {¶ 33} The provision in Section III, subsection D of the National Union policy requires National Union to provide coverage upon exhaustion of SCIGA's coverage, even if that exhaustion occurs before the $1,000,000 retained limit is satisfied. National Union will be bound by this provision of its policy, because it is more favorable to the insured than are those provisions with which it conflicts. Para-Chem's first assignment of error is sustained.
 Second Assignment of Error
"The trial court committed error prejudicial to para-chem by determining that `national union fire insurance company of pittsburgh, pa is required to provide coverage once the underlying or the retained limit in the amount of $1 million hasbeen paid[,'] because National Union is obligated to `pay on behalf of its insured' those sums in excess of the retained limit regardless of whether the retained limit has actually been paid."
 {¶ 34} National Union has conceded that its obligation to provide coverage is triggered once its insured becomes obligated to pay a sum in excess of $1,000,000, regardless of whether or not the first $1,000,000 has actually been paid. Therefore, Para-Chem's second assignment of error is sustained.
 III. {¶ 35} SCIGA's first assignment of error is overruled. SCIGA's second assignment of error is sustained. Para-Chem's two assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for determination of the point at which SCIGA's coverage is exhausted and the National Union policy attaches.
Judgment reversed, and cause remanded.
Slaby, P.J., Carr, J., Concur.
[1] According to the stipulations filed by the parties, Roach and Falkner each received compensation for medical expenses from the BWC: Roach received "in excess of $1,000,000," and Falkner received "in excess of $250,000."
[2] The trial court also relied upon Holeton v. Crouse CartageCo. (2001), 92 Ohio St.3d 115. In that case, the Ohio Supreme Court held that R.C. 4123.931 violated Sections 2, 16, and 19, Article I of the Ohio Constitution, by granting the BWC subrogation rights against third-party tortfeasors regardless of whether the workers' compensation claimant had received a double recovery. This case does not govern the validity of SCIGA's right, bestowed by South Carolina law, to a set-off for benefits received from the BWC.